IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE ORLANDO McKINNON,

   Plaintiff,

v.

ANGELA TALLEY, Warden,
SUSAN MALAGARI,
DEPUTY WARDEN GILLIAM, and
TATE,

   Defendants.

Civil Action: MJM-22-3076

**MEMORANDUM OPINION**

On November 28, 2022, self-represented Willie Orlando McKinnon filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Defendants Director Angela Talley, Warden Susan Malagari, and Deputy Warden Gilliam ("Supervisory Defendants") move to dismiss the complaint, or alternatively, for summary judgment in their favor. ECF No. 13. Defendant Lieutenant Michael Tate moves to dismiss the complaint. ECF No. 20. McKinnon has filed responses. ECF Nos. 17 and 22. Defendants have filed replies. ECF Nos. 18 and 23. No hearing is necessary to decide the motions. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motions are granted.

   *I.*   ***Background***

   **A. McKinnon's Allegations**

McKinnon was incarcerated in a facility of the Montgomery County (Maryland) Department of Corrections and Rehabilitation ("MCDCR"). In his Complaint, McKinnon alleges that on August 6, 2022, Tate came into his cell and sexually assaulted McKinnon by grabbing McKinnon's penis and testicles and tapping his buttocks. ECF No.1 at 1. Tate saw a wire on the

wall and said he was going to take it down and, as he did so, Tate brushed up against McKinnon and grabbed McKinnon's penis and testicles. *Id*. at 2. McKinnon knocked Tate's hand away and loudly asked him what he was doing. *Id*. McKinnon thought this loud response would wake his cellmate, but his cellmate did not move. *Id*. When Tate grabbed the wire, which was attached to McKinnon's radio, McKinnon grabbed the radio so it would not fall. *Id*. When McKinnon turned to put the radio on his bed, Tate slapped him on his buttocks. *Id*. McKinnon's cellmate told him that he had seen and heard everything that transpired between McKinnon and Tate. *Id*. at 2–3. McKinnon called the sexual assault hotline the following day and filed a complaint against Tate. *Id*. at 3.

On August 9, 2022, Captain Ezunagu came to interview McKinnon and his cellmate. *Id*. McKinnon reported the details of the sexual assault. *Id*. About a month later, Ezunagu advised McKinnon that he interviewed Tate and Tate denied the sexual assault. *Id*. McKinnon stated that he wanted to press charges against Tate, but Ezunagu advised that that was Deputy Warden Gilliam's decision. *Id*. McKinnon talked to Gilliam on September 5, 2022, and reiterated his desire to press charges. *Id*. at 3–4. Gilliam advised that he knew about the investigation, but he thought McKinnon was going to wait until he was released to file charges. *Id*. McKinnon told Gilliam he wanted to press charges immediately, and Gilliam agreed that he could do so. *Id*. at 4. As of the filing of the Complaint, no one had come to "get" McKinnon to file charges. *Id*.

McKinnon alleges that Defendants violated his rights under the Fourteenth Amendment. *Id*. He alleges that Talley, Malagari, and Gilliam are liable as supervisors. *Id*. He further contends that Defendants "have a policy or a practice . . . that allows supervisors or [correctional officers] [to] go in and out of inmate cells . . . when inmates are asleep." *Id*. McKinnon alleges that Tate did

not need permission to enter McKinnon's cell and did not have to have another officer with him to monitor his conduct. *Id*. at 4–5.

In his Complaint, McKinnon states that he filed an administrative grievance, and Ezunagu talked to him about the grievance. ECF No. 1-1 at 2. McKinnon claims the grievance was not appealable because Tate denied the sexual assault. *Id*. He attached to his Complaint a copy of a grievance he submitted on August 14, 2022. ECF No. 1-2.

In his opposition responses, McKinnon states that after he reported the assault to an unidentified sergeant who told him that he did not need to file a grievance because the sexual assault complaint would be investigated. ECF No. 17 at 1. He further states that he did not receive a written response to his grievance. *Id*.; ECF No. 22 at 1. Alternatively, he claims that he asked Ezunagu how he could appeal the investigation of his complaint, and Ezunagu told him it was not appealable. ECF No. 17 at 2; ECF No. 22 at 2.

McKinnon seeks compensatory and punitive damages. ECF No. 1-1 at 3.

### B. Defendants' Response

Supervisory Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. ECF No. 13-1. Several exhibits are attached to Supervisory Defendants' motion. ECF Nos. 13-3, 13-4 & 13-5. Tate argues the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and incorporates the arguments and evidence presented by Supervisory Defendants. ECF No. 20-1.

In their motion, Supervisory Defendants argue that the Complaint should be dismissed because (1) McKinnon has not exhausted his administrative remedies, (2) McKinnon fails to state a claim against them; (3) McKinnon fails to plead a *Monell* claim regarding any official policy or

custom; and (4) the claims are duplicative against the three Supervisory Defendants. ECF No. 13-1. They attach as exhibits to their motion the Montgomery County Department of Correction and Rehabilitation Inmate Guidebook, ECF No. 13-3; Montgomery County Department of Correction and Rehabilitation Department Policy and Procedure Manual, Policy Number 3000-37 "Inmate/Resident Grievance Procedures and Guidelines," ECF No. 13-4; and Montgomery County Department of Correction and Rehabilitation Department Policy and Procedure Manual, Policy Number 3000-64 "Implementation of the Prison Rape Elimination Act (PREA)," ECF No. 13-5.

In his motion, Tate further argues that the Complaint should be dismissed because McKinnon failed to exhaust his administrative remedies. ECF No. 20-1.

## II.     *Standard of Review*

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed their motion as a motion to dismiss or, in the alternative, for summary judgment, McKinnon is on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the Court will review McKinnon's claims

under the Rule 56(a) standard and will consider the exhibits filed in support of the Supervisory Defendants' motion.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that McKinnon is a self-represented litigant. A federal court must liberally construe pleadings filed by *pro se* litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 Fed. App'x. 143, 152 (4th Cir. 2016) (citing

5

*Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III.   Discussion

#### A.  Personal Participation

It is well-settled that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (finding that "liability is personal, based upon each defendant's own constitutional violations"). McKinnon generally alleges that Supervisory Defendants were responsible for the alleged assault because they failed to adequately supervise Tate. This claim cannot proceed.

The doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).[1] Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Ultimately, to establish supervisory liability under § 1983, the plaintiff must show that: (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury

---

[1] *Respondeat superior* is a legal doctrine providing that an employer is liable in certain instances for the wrongful acts of an employee. *See Black's Law Dictionary* (8th ed. 2004).

6

suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted). At this juncture, the plaintiff must allege facts that, if proven, would establish such liability.

Where, as here, Plaintiff points to no action or inaction on the part of Supervisory Defendants that resulted in a constitutional injury, the claims against Supervisory Defendants must be dismissed.

McKinnon alleges that Supervisory Defendants created a policy or custom that allowed Tate to go into inmate cells alone whenever he chose. A § 1983 claim may be premised on the unconstitutional actions of individuals executing an official policy that resulted in a deprivation of the plaintiff's federal rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). *Monell* claims consist of two components: (1) a policy or custom (2) that caused a violation of the plaintiff's federal rights. *See Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). McKinnon alleges that officers are permitted to move about the facility but fails to identify a policy that caused constitutional violations.

### B. Exhaustion of Administrative Remedies

Additionally, all Defendants are entitled to dismissal of the Complaint due to McKinnon's failure to exhaust his administrative remedies prior to filing.

The Prisoner Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516,

532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 3d 674, 682 (4th Cir. 2005) (dismissal is appropriate where "the face of a complaint . . . clearly show[s] that an inmate has not exhausted his administrative remedies"). Consequently, if McKinnon has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This

8

requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

MCDCR has established a five-step inmate grievance procedure. ECF No. 13-3 at 18–20 (Inmate Handbook). The handbook directs any inmate with a complaint to request an Inmate Grievance Form. *Id*. at 18. First, inmates must complete and return the form to a correctional staff member for review and response. *Id*. at 19. Inmates may either accept or disagree with the action taken by the staff member. *Id*. Second, if the inmate disagrees with the action, appropriate personnel have five working days to conduct the same review process as the initial correctional staff member. *Id*. Third, if an inmate disagrees with that determination, the inmate may appeal the decision to the appropriate Section head or designee, who must respond within five working days. *Id*. Fourth, if the inmate is dissatisfied with that response, the inmate may then appeal to the Warden for a review to be completed within five working days. *Id*. Fifth, the Warden's determination may be appealed to the Department Director within five working days. *Id*. Additionally, MCDCR's policy regarding complaints of sexual abuse sets out the applicable grievance process. ECF No. 13-5 at 18–20.

Here, the record evidence demonstrates that McKinnon filed only one Step I grievance regarding Tate's actions. There is no evidence that McKinnon ever filed a Step II appeal regarding any complaint. The grievance form provided by McKinnon shows that he accepted the result of the grievance on August 14, 2023, which appears to contradict his unverified assertion that Ezunagu advised him that his complaint was non-grievable. ECF No. 1-3. Further, the grievance

procedures make plain that complaints of sexual assault are not excluded from the grievance process. ECF No. 13-3 at 13–14; ECF No. 13-4 at 2–3; ECF No. 13-5 at 18–20. McKinnon has not presented evidence, such as competing affidavits or written documentation, to support his claims regarding exhaustion. *See CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658–59 (4th Cir. 2020) (recognizing that "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'") (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). The non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). McKinnon's complaint, however, is not verified. He has presented nothing more than conclusory assertions to show exhaustion of his administrative remedies.

In summary, McKinnon has failed to properly refute the affirmative defense that he failed to exhaust the established administrative remedies concerning the claims raised in the Complaint. He has not "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d at 525 (citations omitted). Therefore, Defendants are entitled to summary judgment.[2]

### IV.   Conclusion

For the foregoing reasons, Defendants' motions, ECF Nos. 13 and 20—construed as motions for summary judgment—will be granted and judgment will be entered in Defendants' favor.

A separate Order follows.

____2/27/24_____                              _____/S/._____
Date                                                 Matthew J. Maddox
                                                     United States District Judge

---

[2] The Court need not consider Defendants' additional defenses.